UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---

JOE D. FULTON, individually, and
as a representative of a Class of
Participants and Beneficiaries of the
United Employee Benefit Fund,

        Plaintiff,

        v.

UNITED EMPLOYEE BENEFIT FUND;
GARY MEYERS and JOHN FERNANDEZ,
individually and in their capacity as the BOARD
OF TRUSTEES OF THE UNITED
EMPLOYEE BENEFIT FUND; DAVID
FENSLER, individually and in his capacity as
PLAN ADMINISTRATOR of the UNITED
EMPLOYEE BENEFIT FUND; and HERBERT
O. MCDOWELL, III, individually and in his
capacity as a BROKER for the UNITED
EMPLOYEE BENEFIT FUND,

        Defendants.

Case No.

---

## COMPLAINT

---

Now comes the Plaintiff, JOE D. FULTON, individually and as representative of a Class of

Participants and Beneficiaries of the UNITED EMPLOYEE BENEFIT FUND (the "Fund"), by

his counsel, DEBOFSKY LAW, LTD., and WALCHESKE & LUZI, LLC, for a claim against

Defendants UNITED EMPLOYEE BENEFIT FUND; GARY MEYERS and JOHN

FERNANDEZ, individually and in their capacity as the BOARD OF TRUSTEES OF THE UNITED

EMPLOYEE BENEFIT FUND; DAVID FENSLER, individually and in his capacity as PLAN

ADMINISTRATOR of the UNITED EMPLOYEE BENEFIT FUND, and Herbert O. McDowell,

individually and un his capacity as a BROKER for the UNITED EMPLOYEE BENEFIT FUND,

and alleges and asserts to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the following:

1. Plaintiff Fulton and Class Members are participants in the United Employee Benefit Fund (the "Fund") through which their beneficiaries are entitled to a death benefit funded with policies purchased from various life insurance companies and which are owned by the Fund.

2. In April 2023, Plaintiff first learned that the Defendant Trustees of the Fund were planning to liquidate all existing in-force life insurance contracts and terminate the policy on Plaintiff's life. Upon information and belief, Class Members are being subjected to the same actions.

3. Plaintiff and Class Members brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., to protect their death benefits and prevent the termination of their death benefits because it violates ERISA and the plan documents governing their benefits.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction in this ERISA matter under 28 U.S.C. §1331 and pursuant to 29 U.S.C. §1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. §1001 et seq.

5. This Court has personal jurisdiction over Defendants because they transact business in this District, reside in this District, and have significant contacts with this District, and because ERISA provides for nationwide service of process.

6. Venue is appropriate in this District within the meaning of 29 U.S.C. §1132(e)(2) because some or all of the violations of ERISA occurred in this District and Defendants reside and may be found in this District. Venue is also proper in this District pursuant to 28 U.S.C. §1391 because Defendants do business in this District and a substantial part of the events or omissions giving rise to the claims asserted herein occurred within the District.

7.      In conformity with 29 U.S.C. §1132(h), Plaintiff will serve Complaint by certified mail on the Secretary of Labor and the Secretary of the Treasury.

## THE PARTIES

8.      Plaintiff, Joe D. Fulton, is a resident of Centralia, Illinois. At all times relevant hereto, Plaintiff was a participant in the Fund under ERISA §3(7) (29 U.S.C. §1002(7)).

9.      The Defendant, United Employee Benefit Fund (the "Fund") is an employee benefit fund as that term is defined by 29 U.S.C. § 1002(3); and at all times relevant thereto, maintained its office in Cook County, Illinois located with this district. The Fund's office is located at One Northfield Plaza, Suite 100, Northfield, Illinois 60093.

10.      Defendants Gary Meyers and John Fernandez were, at all times relevant hereto, serving as Trustees of the Fund (the "Board of Trustees"). The Board of Trustees has, at all relevant times, been the Plan Administrator and Plan Sponsor of the Fund, as those terms are defined by ERISA, 29 USC §§ 1002(16)(A) and (B). Defendants Meyers and Fernandez are fiduciaries with respect to the Fund as the Board of Trustees is the Plan Administrator and named fiduciary pursuant to 29 U.S.C. § 1102(a) and through the powers they exercise as the Board of Trustees pursuant to 29 U.S.C. § 1002(21)(A)(i). Defendants Meyers and Fernandez are also parties in interest as that term is defined by 29 U.S.C. § 1002(14).

11.      Defendant Meyers is, on information and belief, an employer-appointed trustee and fiduciary of the Fund charged with the duty to administer the Fund solely in the interests of plan participants and in accordance with the governing plan documents, and all applicable laws.

12.      Defendant Fernandez is, on information and belief, an officer and/or employee of the National Production Workers Union, Local 707 ("NPWU" or "Union"), and a Union-appointed trustee of the Fund charged with the duty to administer the Fund solely in the interests of plan participants and in accordance with the governing plan documents, and all applicable laws.

13.     Defendant David Fensler was appointed by the Board of Trustees to act on its behalf as Plan Administrator in relation to day-to-day operations and administration of the Fund. As Plan Administrator, Defendant Fensler is a fiduciary of the Fund charged with the duty to administer the Fund in the interests of plan participants and in accordance with the governing plan documents, and all applicable laws. Defendants Fensler is also a party in interest as that term is defined by 29 U.S.C. § 1002(14).

14.     The Defendant, Herbert O. McDowell III ("McDowell"), exercised authority or control respecting management or disposition of the assets of the Participating Plans covered by the Fund and exercised discretionary authority or discretionary control over the management of the assets of the Fund and the Fund itself, and thus was a fiduciary of the Participating Plans pursuant ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), and a party in interest pursuant to ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A).

## NATURE OF THE ACTION

15.     This action is brought by Plaintiff individually and as a representative of a Class of Participants and Beneficiaries of the United Employee Benefit Fund, seeking various forms of equitable relief to remedy the loss or threatened loss of a death benefits which the Fund promised to pay Plaintiff and Class Members in event of death. Plaintiff and Class Members seek various equitable remedies for paying excessive fees related to the death benefits in that significantly more expensive universal life insurance policies were purchased by the Fund instead of less costly term-life insurance policies. Plaintiff and Class Members seek an accounting as to how this benefit was administered and as to how his payments to the Fund were administered, as well as an accounting of any accrued cash value exists in the life insurance policies purchased by the Fund to provide the promised death benefits. Plaintiff and Class Members also seeks removal of the trustees and

4

fiduciaries of the Fund and their replacement with independent trustees or fiduciaries, along with any and all additional equitable relief to which they may be entitled.

16.     Additionally, the Fund's government filings disclose that, since at least 2018, the Fund no longer has any employers obligated to make contributions to the Fund. The trust agreement governing the Fund requires that the "Trust shall terminate upon the occurrence of one or more of the following: (a) the termination of the obligation of all Employers to make contributions . . . ." Plaintiff and Class Members therefore seek an order from the Court directing that the Fund be terminated, and directing the Defendants to transfer, without any reduction in benefits, ownership to Plaintiff and Class Members of the life insurance policies on their lives now owned by the Fund in order to provide for Plaintiff's and Class Member's death benefits.

## STATEMENT OF FACTS

17.     On information and belief, in 1991, the Office & Professional Workers Division of Local 2411 of the Chicago and Central States Joint Board, of the Amalgamated Clothing and Textile Workers Union ("Local 2411") and certain employers who were members of the Professional Workers Master Contract Group sponsored and established the Fund as a Voluntary Employees Beneficiary Association ("VEBA") under ERISA to provide "welfare" benefits as that term is defined in 29 U.S.C. § 1002(1) to members and subscribers.  A true and correct copy of the "United Employee Benefit Fund Trust Agreement," together with certain amendments and a "Merger Agreement" (collectively referred to as the "Trust Agreement"), provided to Plaintiff by the Defendants is attached as Exhibit A.  The Fund is a multiple employer welfare arrangement ("MEWA") within the meaning of ERISA § 3(40), 29 U.S.C. § 1002(40), holding and administering the assets of one or more employee welfare benefit plans within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1).

18. On information and belief, sometime between 2000 and 2003, Local 2411 ceased its involvement with the Fund, and a different union, the NPWU, succeeded Local 2411 as the only union sponsor of the Fund. On information and belief, since at least 2003, all union-appointed trustees of the Fund, including Defendant Fernandez, have been appointed by the NPWU.

19. In 1998, the Fund provided Plaintiff with a death benefit in the aggregate amount of $5,000,000 in return for his agreement to make payments in order to fund the death benefit, which he made by making four annual payments of $200,000 beginning in 1998 (copies of two "Certificate of Benefit" documents provided by the Fund to Plaintiff are attached hereto as Exhibit "B"). The plan was funded through the Fund's purchase of a universal life insurance policy on Plaintiff's life, as to which McDowell acted as the broker and as a party-in-interest with the Fund, and the Fund retained ownership of the Policy or Policies.

20. Around the same time period, the Fund provided other similarly-situated Class members with death benefits in return for their agreements to make significant payments in order to fund their death benefits. The death benefit for Class Members was also funded through the Fund's purchase of universal life insurance policy of Class Members' lives, as to which fiduciaries to the Fund acted as brokers and parties-in-interest with the Fund.

21. In 1998, Plaintiff was the President and owner of DuraTech, Corporation, a manufacturer of fiberglass products and services, located in Centralia, Illinois, and initially became a welfare plan participant through the Fund based on his relationship with DuraTech.

22. Although he himself was not a member of a collective bargaining unit, Plaintiff was permitted and was eligible pursuant to a subscription agreement to obtain a death benefit from the Fund.

23. At the time, Plaintiff received a death benefit from the Fund, he was informed and believed that his death benefit was vested so long as he made all required contributions that the Fund would inform him from time to time were due and owing.

24. At all times relevant hereto, Plaintiff made all payments that the Fund told him were due and owing and was insured under one or more universal life insurance policies that were in full force and effect during that time frame.

25. Upon information and belief, other Class Members made all payments that the Fund told them were due and owing and were insured under one or more universal life insurance policies that were in full force and effect during this same time frame.

26. During the 2010's, DuraTech's business declined and the number of individuals it employed reduced from 26 to fewer than five; and Fulton informed McDowell that he planned to retire. McDowell, acting on behalf of the Fund, advised him that he could retain his death benefit, but that he would be on "retirement status" even though DuraTech, by 2012, no longer had any remaining unionized employees.

27. In early 2015, Plaintiff learned that the accumulated cash value on the $4.5 million universal life policy was $831,447 and was projected to be sufficient to fund policy premiums to age 78. Plaintiff learned at the same time that the cash value on the $500,000 policy was $95,599, which was also projected to be sufficient to keep the policy premiums paid until he reached age 78. At that time, McDowell, who was not only the broker but was also serving as a Trustee of the Fund at that time, induced Plaintiff to lower the value of his death benefit to prolong the paid-up coverage by purchasing two new policies – one was in the amount of $2,650,000 and the other in the amount of $1,500,000. New Certificates of Benefit were issued reflecting that change (copies attached as Exhibit "C").

28.     In May 2020, Plaintiff, who was 70 years old at the time, received a letter from the Fund dated May 11, 2020 informing him that the death benefits of individuals aged 65 or older were being reduced by 30%. In July 2020, Plaintiff received a second letter dated February 3, 2020 stating the same thing (copies of both letters are attached as Exhibit "D.").  Other Class Members received the same letter.

29.     After receiving the letters advising of the benefit reduction, Plaintiff contacted McDowell, who advised him in a phone call on August 13, 2021 that the benefits were not being reduced; instead, the Fund was taking 30% of the accrued cash value in his policies.

30.     Plaintiff heard nothing thereafter from the Fund until he received a letter dated August 10, 2022 stating that his participation in the Fund and his benefits had been terminated (copy attached as Exhibit "E.").

31.     Upon information and belief, Class Members received the same letters stating that their participation in the Fund and their benefits had been terminated.

32.     All told, Plaintiff paid the Fund in excess of $800,000 from 1998 until 2022 to maintain his death benefit and participation in the Fund. Class Members, upon information and belief, also paid substantial amounts to the Fund to maintain their death benefits.

33.     On information and belief, since at least 2018, the Fund has had no active contributing employers; that is, no employers making new contributions to the Fund for the benefit of employees. The Fund's 2018 Form 5500 completed by the Fund requires the Fund to identify the "total number of employers obligated to contribute to the plan," to which the Fund answered "0." Indeed, no new participating employers have joined the Fund since 2014. As of December 31, 2018, the Fund reported that it had 138 participants and $21,997,890 in assets, which Plaintiff believes are comprised of accrued cash value in policies sold to Plaintiff and Class Members.

8

34.     The Trust Agreement requires that the "Trust shall terminate upon the occurrence of one or more of the following: (a) the termination of the obligation of all Employers to make contributions . . . ." (Ex. A at Section 9.2.)

35.     Despite the requirement in the Trust Agreement that the Fund terminate when there were no more employers required to make contributions to the Fund and, as of at least 2018, there were no longer any employers with such an obligation, the Fund trustees, Defendants Fernandez and Meyers have failed to terminate the Fund.

36.     Section 403(d) of ERISA, 29 U.S.C. § 1103(d)(2) provides that the "assets of a welfare plan which terminates shall be distributed in accordance with the terms of the plan[.]"

37.     On information and belief, upon the termination of the Fund, the Fund would be required to transfer ownership of Plaintiff's and Class Members' Life Insurance Policy or Policies to Plaintiff and Class Members within one year of plan termination. Nonetheless, the Fund has failed to do so.

38.     Instead, the Benefit Fund has continued incurring unnecessary administrative expenses to operate a plan that should be terminated.  For example, based on the information in the Fund's Form 5500, in 2018 the Benefit Fund incurred $1,167,546 in administrative expenses, constituting more than 88% of the total plan expenses for 2018.  The Fund has also incurred and continues to incur substantial additional expenses, including legal fees, which are rapidly depleting the assets of the Fund.

39.     Additionally, no reason exists that the same death benefit amount could not be funded through the Fund's purchase of term life insurance on Plaintiff's and Class Members' lives, for substantially less money, and Plaintiff and Class Members were charged excessive fees costing them millions of dollars in excessive payments by utilizing universal life insurance policies instead.

40.     During the putative Class Period (April 19, 2017, through the date of judgment) Defendants, as fiduciaries of the Fund, as that term is defined under ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A), breached the duty of prudence they owed to the Fund by requiring Plaintiff and Class Members to "pay[ ] excessive [ ]fees" *Hughes v. Northwestern Univ.*,142 S. Ct. 737, 739-740 (2022), in the form of universal life insurance policies with costly brokerage commissions instead of materially identical and less expensive term life insurance for materially similar dearth benefits.

41.     These objectively unreasonable insurance fees cannot be contextually justified and do not fall within "the range of reasonable judgments a fiduciary may make based on her experience and expertise." *See Hughes*, 142 S. Ct. at 742.

42.     Defendants breached their fiduciary duty of prudence by causing the Plan participants to pay excessive insurance fees and Defendants unreasonably failed to leverage the size of the Plan to pay reasonable fees for death benefits funded by insurance policies.

43.     There is no requirement to allege the actual inappropriate fiduciary actions taken because "an ERISA plaintiff alleging breach of fiduciary duty does not need to plead details to which he has no access, as long as the facts alleged tell a plausible story." *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016).

44.     The unreasonable fees and charges paid for universal life insurance policies that Plaintiff and the Class Members did not even own inferentially tells the plausible story that Defendants breached their fiduciary duty of prudence under ERISA.

45.     These breaches of fiduciary duty caused Plaintiff and Class Members tens of millions of dollars of harm in the form of significantly higher charges and fees than they otherwise should have had in the absence of these unreasonable universal life insurance policies fees.

46.     Plaintiff and Class Members have recently learned that the Secretary of Labor has brought another lawsuit against the Fund and various individuals – *Walsh v. Fensler*, et al., Case No.

22-cv-1030 (N.D. Ill. filed Feb. 28, 2022). The lawsuit alleges that the named defendants breached their fiduciary duties owed to plan participants and that they engaged in transactions prohibited by 29 U.S.C. § 1106.

47. The *Walsh* lawsuit alleges that plan assets were used to make improper loans to trustees, and that plan assets were improperly used to make monetary transfers to McDowell's real estate foreclosure attorney, to make improper payments to purchase McDowell's personal home out of foreclosure, to pay unreasonable compensation to McDowell, and that other ERISA violations were committed.

48. Plaintiff and Class Members also recently learned that another lawsuit was brought against the Fund relating to another individual who was eligible to receive a death benefit from the Fund that was funded with life insurance – *Futterman v. United Employee Benefit Plan, et al.*, Case No. 20-cv-6722 (N.D. Ill.).

49. Finally, there is another case, *Bates v. McDowell*, Case No. 21-cv-5238 (N.D. Ill.), currently pending in the Northern District of Illinois, which alleges that McDowell breached his fiduciary obligations to the Fund.

## CLASS ACTION ALLEGATIONS

50. 29 U.S.C. §1132(a)(3) authorizes any participant or beneficiary of the Plan to bring an action individually, and on behalf of others similarly-situated, to enforce a breaching fiduciary's liability.

51. In acting in this representative capacity, Plaintiff seeks to certify this action as a class action on behalf of all participants and beneficiaries of the Fund who purchased a universal life insurance policy with death benefit at the behest of the Fund and whose coverage has now been terminated or has been threatened to be terminated. Plaintiff seeks to certify, and to be appointed as representatives of, the following Class:

All participants and beneficiaries of the United Employee Benefit Fund who purchased a universal life insurance policy with death benefit at the behest of the Fund and whose coverage was terminated or has been threatened to be terminated, beginning six (6) years before the commencement of this action and running through the date of judgment, excluding the Defendants or any other fiduciaries of the Plan.

52.    According to the Form 5500 filed the Fund last in 2018, the Class includes approximately one hundred and thirty-eight (138) members and is so large that joinder of all its members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

53.    There are questions of law and fact common to this Class pursuant to Federal Rule of Civil Procedure 23(a)(2), because Defendants owed fiduciary duties to Plaintiff and members of the Class and took the actions and omissions as alleged. Common questions of law and fact include but are not limited to the following:

- Whether Defendants are fiduciaries liable for the remedies provided by 29 U.S.C. § 1132(a)(3);

- Whether Defendants breached their fiduciary duties to Plaintiff and members of the Class with regard to having Plaintiff and Class Members purchase universal life insurance policies to fund death benefits and whose coverage has now been terminated or is threatened to be terminated;

- Whether Defendants engaged in prohibited transactions regarding Fund assets; and

- What Plan-wide equitable and other relief the Court should impose in light of Defendants' breach of fiduciary duty.

54.    Plaintiff's claims are typical of the claims of the Class pursuant to Federal Rule of Civil Procedure 23(a)(3), because Plaintiff was a participant during the time period at issue and all members of the Class as participants of the Plan are equally entitled to their death benefits under the universal life insurance policies they purchased at the behest of the Fund.

12

55. Plaintiff will adequately represent the Class pursuant to Federal Rule of Civil Procedure 23(a)(4), because he is a participant in the Fund owed recovery based on the death benefit he purchased under the universal life policy and which now has terminated or is threatened to be terminated during the Class Period, has no interests that conflicts with the Class, is committed to the vigorous representation of the Class, and has engaged experienced and competent lawyers to represent the Class.

56. Certification is appropriate under Federal Rule of Civil Procedure 23(b)(1), because prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of (1) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant Pension Committee concerning its discharge of fiduciary duties under 29 U.S.C. § 1132(a)(3); and (2) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for participants and beneficiaries would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

57. Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

58. Plaintiff's attorneys are experienced in complex ERISA and class litigation and will adequately represent the Class.

59. The claims asserted in this case fall outside the scope of any exhaustion language in the Plan. Exhaustion is intended to serve as an administrative procedure for participants and

beneficiaries whose claims have been denied and not where a participant or beneficiary brings suit on behalf of similarly-situated participants and beneficiaries for breaches of fiduciary duty.

60.     Moreover, and in any event, any administrative appeal would be futile because the entity hearing the appeal (the Plan Administrator) is the same Plan Administrator that made the decisions that are at issue in this lawsuit. Policy supporting exhaustion of administrative remedies in certain circumstances – that the Court should review and where appropriate defer to a Plan administrator's decision – does not exist here because courts will not defer to Plan administrator's legal analysis and interpretation.

## FACTS GIVING RISE TO A CAUSE OF ACTION

### COUNT I
### Breach of Fiduciary Duty under ERISA, as Amended
### (Plaintiff and Class against Defendants – Class Claim under 29 U.S.C. § 1132(a)(3))

61.     Plaintiff and Class Members incorporate and re-allege by reference each of the foregoing paragraphs as if fully set forth herein.

62.     ERISA Section 404, 29 U.S.C. § 1104, imposes fiduciary obligations on the Fund, its trustees, its Plan Administrator, and anyone else acting on behalf of the Fund in a fiduciary capacity to act exclusively in the interest of plan participants in order to provide them with benefits and to act with "care, skill, prudence and diligence" in the administration of the plan, as well as to act "in accordance with the documents and instruments governing the plan."

63.     Notwithstanding the foregoing, the defendants and each of them breached their fiduciary responsibilities by the following acts of malfeasance, misfeasance, or nonfeasance:

a)     Failing to fund the death benefits through the Fund's purchase of term life insurance on Plaintiff's and Class Members' lives, for substantially less cost than a universal life insurance policy, and thereby causing Plaintiff and Class Members to pay excessive fees for death benefits;

14

b) Failing to protect Plaintiff's and Class Members' death benefit from going into lapse or default;

c) Failing to notify Plaintiff and Class Members in a timely manner of any financial obligations they needed to meet in order to prevent a lapse or default of the life insurance funding their death benefits;

d) Failing to give Plaintiff and Class Members an opportunity to remedy any lapse in payment during the grace period permitted for remedying a failure to pay premiums when due;

e) Failing to give Plaintiff and Class Members an opportunity to restructure or reduce their death benefit in order to prevent a lapse or default;

f) Failing to give Plaintiff and Class Members the principal benefit of a universal life insurance policy; i.e., to accumulate substantial tax-free savings in addition to a death benefit;

g) Failing to advise or give an opportunity to Plaintiff and Class Members to purchase the life insurance policy that funded their death benefits as they had the right to pursuant to their rights set forth in the summary plan description;

h) Engaging in other acts or omissions that jeopardized and/or which led to the loss of the death benefit Plaintiff and Class Members were promised;

i) Engaging in other acts or omissions that resulted in a lapse of the insurance policy that funded Plaintiff's and Class Members' death benefit; and

j) Engaging in other acts and omissions to earn excess commissions or otherwise engage in self-dealing and enrichment.

64. As a direct and proximate result of one or more of the foregoing acts or omissions, Plaintiff and Class Members were deprived of the death benefit that the Fund promised they would

receive and for which they had expended substantial funds, entitled them to appropriate equitable relief under 29 U.S.C. § 1132(a)(3).

## COUNT 2
### Prohibited Transactions Under ERISA, as Amended
### (Plaintiff and Class against Defendants – Class Claim under 29 U.S.C. § 1106(a), (b))

69.     Plaintiff and Class Members incorporate and re-allege by reference each of the foregoing paragraphs as if fully set forth herein.

70.     ERISA §§ 406(a) and (b) (29 U.S.C. §§ 1106(a) and (b)) catalogue various acts or transactions that a fiduciary and a plan are not permitted to engage in; and in particular, it is prohibited for pans or fiduciaries to deal with plan assets in a manner other than in the best interest of the plan participants or to engage in any self-dealing.

71.     ERISA § 406(b) prohibits fiduciaries from using plan assets for their own benefit. 29 U.S.C. § 1106(b). In addition, ERISA § 406(a) prohibits fiduciaries from using plan assets in a transaction with or for the benefit of "parties in interest," as defined in ERISA § 3(14), 29 U.S.C. § 1002(14), unless those transactions meet the strict requirements of statutory, class, or individual exemptions. 29 U.S.C. § 1106(a); ERISA § 408, 29 U.S.C. § 1108.

72.     When ERISA's strict fiduciary standards are not met, plan participants have the authority to seek relief under ERISA § 502(a)(3), 29 U.S.C. §§ 1132(a)(3), to restore plan losses, to recover unjust profits, and to obtain other remedial and equitable relief. Participants may also seek to enjoin a breaching fiduciary from acting as a fiduciary or service provider to employee benefit plans in the future.

73.     Notwithstanding the statutory prohibitions against self-dealing and other activities which are prohibited, defendants and each of them engaged in a series of prohibited transactions such as structuring Plaintiff's and the Class Members' benefits in a manner that paid McDowell excessive brokerage commissions for selling universal life insurance policies, and by making loans

16

and other payments to McDowell and others that were unlawful and which impaired the value and continuation of Plaintiff's and Class Members' death benefits.

74. As a direct and proximate result of the foregoing, the universal life insurance used to fund Plaintiff's death benefit lapsed or will lapse, and the death benefit to which Plaintiff and Class Members were entitled has been defaulted or will default, in violation of 29 U.S.C. § 1106(a), (b).

**COUNT 3**
**FAILURE TO TERMINATE TRUST**
**IN ACCORDANCE WITH TRUST AGREEMENT**
**(Plaintiff and Class Members Against All Defendants –**
**Class Claim under 29 U.S.C. § 1132(a)(3))**

75. Plaintiff and Class Members incorporate and re-allege by reference each of the foregoing paragraphs as if fully set forth herein.

76. The Trust Agreement requires that the "Trust shall terminate upon the occurrence of one or more of the following: (a) the termination of the obligation of all Employers to make contributions . . . ."

77. The 2018 Form 5500 completed by the Fund requires the Fund to identify the "total number of employers obligated to contribute to the plan," to which the Fund entered "0."

78. Therefore, as of 2018, if not earlier, there was "a termination of the obligation of all employers to make contributions" and the Defendants were obligated to terminate the Fund.

79. Upon termination, the Fund was required to "first pay any obligations of the Trust;" and then "any remaining assets shall be used at the discretion of the Trustees to provide benefits for Participants covered at the time of termination of the Agreement consistent with the purposes of the Trust." (Ex. A at Section 9.4.)

80. Because the Plaintiff's and Class Member's death benefit is fully funded by Plaintiff's and Class Members' life insurance policies for which their employers contributed on behalf of them the full premium, upon termination of the Fund, the Fund has an obligation to transfer or assign ownership of the policies, as well as the accumulated cash value in the policies to Plaintiff and Class Members.

81. The failure to transfer or assign Plaintiff's and Class Member's life insurance policies and the accumulated cash value in the policies to Plaintiff and Class Members upon the initial cessation of employer contributions to the Fund constitutes a violation of the terms of the Trust Agreement and a breach of fiduciary duty by Defendants.

82. To the extent that the continuation of the Fund beyond the initial cessation of employer contributions to the Fund has caused any losses to the fund, Defendants have an obligation to restore those losses to the Benefit Fund.

83. To the extent that the assets of the Fund have been reduced as a result of excessive administrative expenses, Defendants have an obligation to restore those losses to the Fund.

84. Upon termination of the Fund, any fund assets in excess of the assets held by insurance companies in connection with the universal life policies, which policies with their accumulated value should be transferred to the respective participants, should be paid either to participants, or at their direction, to their insurance companies to provide for extended eligibility for life insurance coverage.

**WHEREFORE**, Plaintiff and Class Members pray that judgment be entered against Defendants on all claims and request that the Court award the following relief:

A. A Determination that this action may proceed as a class action under Rule 23(b)(1), or in the alternative Rule 23(b)(2), of the Federal Rules of Civil Procedure;

B. Designation of Plaintiffs as Class Representatives and designation of Plaintiffs' counsel as Class Counsel;

18

C.      A Declaration the Defendants are Plan fiduciaries and have breached their fiduciary duties under ERISA;

D.      An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of fiduciary duty, including restoring to the Plan all losses resulting from paying unreasonable fees for universal life policies instead of term life policies, restoring to the Plan all profits the Defendants made through use of the Plan's assets, and restoring to the Plan all profits which the Participants would have made if the Defendants had fulfilled their fiduciary obligations;

E.      An Accounting from Defendants and each of them as to all payments made by Plaintiff and Class Members in relation to the death benefit his purchased from the Fund and all disbursement made to Plaintiff and Class Members and all disbursements made on Plaintiff's and Class Members' behalf to any and all insurance companies that insured their death benefits with life insurance;

F.      An Accounting year by year from 1998 until present as to the cash value accrued in any and all life insurance policies purchased by the Fund on Plaintiff's and Class Members' behalf;

G.      An Order directing any plan fiduciary or party in interest who received any money, or a financial benefit derived from the life insurance purchased to fund Plaintiff's and Class Members' death benefits to restore to the Fund any funds received by such individual on account of any fiduciary breach or prohibited transaction so that Plaintiff and Class Members can receive some or all of their death benefits;

H.      An Order removing the existing plan fiduciaries and replacing them with independent fiduciaries;

I.      A Declaration that there was "a termination of the obligation of all employers to make contributions" and the Defendants were obligated to terminate the Fund;

J.      An Order that any fund assets in excess of the assets held by insurance companies in connection with the universal life policies should be transferred to the respective participants, should be paid either to participants, or at their direction, to their insurance companies to provide for extended eligibility for life insurance coverage;

K.      An Order requiring Defendants to disgorge all profits received from, or in respect of, the Fund, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(3) in the form of an accounting for profits, imposition of a constructive trust, or a surcharge against Defendants as necessary to effectuate said relief, and to prevent Defendants' unjust enrichment;

L.      An Order enjoining Defendants from any future violation of their ERISA fiduciary responsibilities, obligations, and duties, with regard to the death benefits funded by

universal life health policies that participants and beneficiaries are entitled to under the Plan;

M.    Issuance of an award of disbursements and expenses for this action, including reasonable attorneys' fees and costs under ERISA §502(g)(1), 29 U.S.C. §1132(g)(1)); and

N.    Such other and further relief as the Court deems equitable and just.

Dated this 19th day of April, 2023

s/ Mark D. DeBofsky
Mark D. DeBofsky
**DEBOFSKY LAW, LTD.**
150 N. Wacker Dr., Suite 1925
Chicago, Illinois 60606
T-(312) 561-4040
F-(312) 929-0309
Email – mdebofsky@debofsky.com

Paul M. Secunda
**WALCHESKE & LUZI, LLC**
125 S. Wacker Dr., Suite 300
Chicago, Illinois 60606
T-224-698-2630
F-(262) 565-6469
E-Mail - psecunda@walcheskeluzi.com

Counsel for Plaintiff and Proposed Class