## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Joe D. Fulton, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-02468 |
| | ) | |
| United Employee Benefit Fund, et al., | ) | |
| | ) | |
| *Defendants*. | ) | |

**DEFENDANTS UNITED EMPLOYEE BENEFIT FUND, GARY MEYERS, AND JOHN FERNANDEZ'S MOTION TO DISMISS PLAINTIFF JOE D. FULTON'S COMPLAINT**

104366507

**TABLE OF CONTENTS**

**Page**

BACKGROUND ................................................................................................................ 1

    A.    The Plan was established as a Taft Hartley trust, which was solely offered to Union employers. ...................................................................................... 1

    B.    DuraTech was terminated as a participating employer in 2022 for its failure to maintain Union employees, which is a requirement to participate in the Plan. .................................................................................................................. 2

LEGAL STANDARD ...................................................................................................... 4

ARGUMENT & AUTHORITIES ................................................................................... 6

    A.    The Court lacks subject-matter jurisdiction over Plaintiff's claims because Plaintiff is no longer a participant under the Plan and lacks standing to pursue the claims he has asserted. ................................................................. 6

        1.    Plaintiff lacks standing because he acknowledges that he is no longer a participant. ...................................................................................... 6

        2.    The plain terms of the Plan confirm that Plaintiff was properly terminated and is no longer a participant entitled to benefits. ........... 7

            a.    The Plan's benefits are expressly unvested for all participants. .................................................................................. 7

            b.    DuraTech was properly terminated pursuant to the terms of the Plan for its failure to maintain its Union status. ................. 9

    B.    Plaintiff's claims for breach of fiduciary duty should be dismissed because the relief Plaintiff seeks is available under Section 502(a)(1)(B). .............. 10

    C.    Plaintiff's Complaint should also be dismissed because Plaintiff has not exhausted his mandatory administrative remedies under the Plan.............. 11

    D.    The Fund is not a fiduciary and therefore is not a proper Defendant for Plaintiff's breach of fiduciary and prohibited transaction claims. .............. 13

    E.    Counts I and II should be dismissed because Plaintiff has not pleaded facts to plausibly support either claim. ............................................................... 15

        1.    Plaintiff fails to plead sufficient facts to support a breach of fiduciary duty claim against Defendant Trustees. ......................................... 15

2.      Plaintiff fails to plead sufficient facts to support a prohibited transaction claim against Defendant Trustees. ................................... 17

CONCLUSION ........................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*188 LLC v. Trinity Indus., Inc.*,
   300 F.3d 730 (7th Cir. 2002) ......................................................................................................5

*Albert v. Oshkosh Corp.*,
   47 F.4th 570 (7th Cir. 2022), *reh'g denied*, No. 21-2789, 2022 WL 4372363 (7th Cir. Sept.
   21, 2022) ....................................................................................................................................17

*Alexander v. United States*,
   721 F.3d 418 (7th Cir. 2013) ....................................................................................................15

*Allen v. GreatBanc Tr. Co.*,
   835 F.3d 670 (7th Cir. 2016) ....................................................................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................................................5

*Bardo v. Stolworthy*,
   No. 15-CV-1193-JPG, 2015 WL 7713710 (S.D. Ill. Nov. 30, 2015) ......................................19

*Bartnett v. Abbott Lab'ys*,
   492 F. Supp. 3d 787 (N.D. Ill. 2020) ............................................................................13, 14, 15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................................................5

*Curtiss-Wright Corp. v. Schoonejongen*,
   514 U.S. 73 (1995)........................................................................................................................8

*Dean v. Nat'l Prod. Workers Union Severance Tr. Plan*,
   46 F.4th 535 (7th Cir. 2022), *reh'g denied*, No. 21-1872, 2022 WL 4126291 (7th Cir. Sept. 9,
   2022) ..........................................................................................................................................14

*Di Joseph v. Standard Ins. Co.*,
   776 F. App'x 343 (7th Cir. 2019) ..............................................................................................12

*Ed Miniat, Inc. v. Globe Life Ins. Grp., Inc.*,
   805 F.2d 732 (7th Cir.1986) ........................................................................................................5

*Evers v. Astrue*,
   536 F.3d 651 (7th Cir. 2008) ...................................................................................................5, 6

*Firestone Tire & Rubber Co. v. Bruch*,
 489 U.S. 101 (1989)....................................................................................................6

*Forman v. TriHealth, Inc.*,
 40 F.4th 443 (6th Cir. 2022) ....................................................................................17

*Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*,
 530 U.S. 238 (2000)....................................................................................................6

*Hecker v. Deere & Co.*,
 556 F.3d 575 (7th Cir. 2009) .....................................................................................5

*In re Sears Retiree Grp. Life Ins. Litig.*,
 90 F. Supp. 2d 940 (N.D. Ill. 2000) ..........................................................................9

*Kamler v. H/N Telecomm. Servs., Inc.*,
 305 F.3d 672 (7th Cir. 2002) .....................................................................................6

*Kenseth v. Dean Health Plan, Inc.*,
 610 F.3d 452 (7th Cir. 2010) ...................................................................................13

*Kross v. Western Elec. Co.*,
 701 F.2d 1238 (7th Cir. 1983) .................................................................................12

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
 552 U.S. 248 (2008)..................................................................................................11

*Lindemann v. Mobil Oil Corp.*,
 79 F.3d 647 (7th Cir. 1996) ...............................................................................11, 13

*Lockheed Corp. v. Spink*,
 517 U.S. 882 (1996)..................................................................................................18

*Long v. Shorebank Dev. Corp.*,
 182 F.3d 548 (7th Cir. 1999) .....................................................................................5

*M & G Polymers USA, LLC v. Tackett*,
 574 U.S. 427 (2015)....................................................................................................8

*N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*,
 163 F.3d 449 (7th Cir. 1998) ...................................................................................16

*Pelfresne v. Vill. of Williams Bay*,
 917 F.2d 1017 (7th Cir. 1990) .................................................................................19

*Powell v. A.T. & T. Communications, Inc.*,
 938 F.2d 823 (7th Cir.1991) ....................................................................................12

104366507

iv

*Powers v. Corn Prods. Int'l, Inc.*,
  557 F. Supp. 2d 928 (N.D. Ill. 2008) ..................................................................................11

*Sallee v. Rexnord Corp.*,
  985 F.2d 927 (7th Cir. 1993) .................................................................................................9

*Scott v. Aon Hewitt Fin., Advisors, LLC*,
  No. 17 C 679, 2018 WL 1384300 (N.D. Ill. Mar. 19, 2018) ...................................................17

*Sharp Elecs. Corp. v. Metro. Life Ins. Co.*,
  578 F.3d 505 (7th Cir. 2009) ................................................................................................15

*Shine v. Univ. of Chicago*,
  No. 12 C 8182, 2013 WL 1290206 (N.D. Ill. Mar. 28, 2013) ................................................13

*Stark v. PPM Am., Inc.*,
  354 F.3d 666 (7th Cir. 2004) ................................................................................................12

*Todd v. AIG Life Ins. Co.*,
  47 F.3d 1448 (5th Cir. 1995) ................................................................................................14

*Varity Corp. v. Howe*,
  516 U.S. 489 (1996)...............................................................................................................10

*Virnich v. Vorwald*,
  664 F.3d 206 (7th Cir. 2011) ..................................................................................................5

*Walsh v. Fensler, et al.*,
  Case No. 1:22-cv-1030 (N.D. Ill.) .......................................................................................18

*Wright v. Associated Ins. Cos. Inc.*,
  29 F.3d 1244 (7th Cir. 1994) ..................................................................................................5

*Zhou v. Guardian Life Ins. Co. of America*,
  295 F.3d 677 (7th Cir.2002) ................................................................................................13

STATUTES

29 U.S.C. § 1002(7) .....................................................................................................................6

29 U.S.C. § 1002(21)(A).............................................................................................................14

29 U.S.C. § 1002(40) ...................................................................................................................1

29 U.S.C. § 1106(b)(3) ...............................................................................................................18

29 U.S.C. § 1132(a) .........................................................................................................6, 7, 10, 11

**OTHER AUTHORITIES**

Rule 12(b)(1)........................................................................................................................5

Rule 12(b)(6)....................................................................................................................4, 5

Pursuant to Federal Rules 12(b)(1) and 12(b)(6) Defendants United Employee Benefit Fund (the "Fund" or "Plan"), Gary Meyers, and John Fernandez (collectively, "Defendants") move to dismiss Plaintiff Joe D. Fulton's ("Plaintiff's") Complaint because this Court lacks subject-matter jurisdiction over this action and the Complaint fails to state a claim under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*

As a threshold matter, each of Plaintiff's claims should be dismissed as a matter of law because Plaintiff is no longer a participant in the ERISA welfare plan at issue and therefore has no standing to bring this case. Although Plaintiff pleads jurisdiction under ERISA, this Court lacks subject-matter jurisdiction over this action because Plaintiff admits he received a letter which terminated his participation in the Plan on August 10, 2022, before he filed this action, and his Complaint should be dismissed for this reason alone. Even if this Court does have subject matter jurisdiction over this action, Plaintiff's remaining claims should be dismissed due to Plaintiff's failure to exhaust mandatory administrative remedies and failure to state a claim.

## BACKGROUND

**A.**    **The Plan was established as a Taft Hartley trust, which was solely offered to Union employers.**

In December 1991, the Fund was established through a Trust Agreement executed by the Master Contracting Group, as the employer, and Office and Professional Workers, a Division of Local 241, a Local of the Chicago and Central State Joint Board, Amalgamated Clothing and Textile Union, (the "Union"). *See* Compl. ¶ 17; Compl. Ex. A, Trust Agreement at 1. The Fund was established as a Voluntary Employees Beneficiary Association ("VEBA") under ERISA to provide "welfare" benefits as that term is defined in 29 U.S.C. § 1002(1) to members and subscribers. Compl. ¶ 17. Pursuant to the Taft Hartley provisions, which require that control be equally divided between management and Union, the Plan sponsors each appointed one trustee.

104366507                                                        1

Compl. Ex. A, Trust Agreement at 5, section 2.1.

Under the Trust Agreement, the Fund provides death benefits that are funded through life insurance policies purchased on participants' lives. The Fund owns these policies, including the policy issued on Plaintiff's life. *See* Compl. ¶ 19; Compl. Ex. A, Trust Agreement, Section 3.3 ("Title to all Trust assets, including but not limited to insurance policies, shall be and remain in the Trustees . . . ."). No participant has the right to any benefit under the Plan except a benefit payable on death. The Trustees have full rights to the policies, including the authority to redeem, pledge, or borrow on the cash values of the policies. Section 3.6 of the Trust Agreement provides in material part:

> The Trustees shall have the power with respect to the policies held for the benefit of participants hereunder, to sell or assign such policies, to receive all dividends thereon, to surrender such policies for cash, to change and successively change the Beneficiary or Beneficiaries named in such policies, to designate methods of payment and distribution or settlement of the proceeds and values thereof, to convert policies from one form to another, and otherwise to exercise all of the rights and privileges of ownership of such policies.

Compl. Ex. A § 3.6.

Reflecting the Trust Agreement, the Summary Plan Description ("SPD") expressly states that participants have no ownership rights to the insurance policies written on their lives. Ex. 1, SPD[1] at 2 ("[T]he Trust Fund owns the life insurance policies that provide the death benefits payable by the Plan, the Trustees generally have all the rights of policy owners . . . .").

**B.** **DuraTech was terminated as a participating employer in 2022 for its failure to maintain Union employees, which is a requirement to participate in the Plan.**

Mr. Fulton became a participant under the Plan through his employer, DuraTech Corporation ("DuraTech"), after it enrolled in the Plan in 1998 via a Subscription Agreement. *See*

---

[1] The Court can consider the SPD in connection its motion to dismiss because it forms part of the operative Plan documents and is fundamental to Plaintiff's claims. *See infra*, Legal Standard.

Ex. 2, Subscription Agreement[2] at 8–9. Plaintiff enrolled in the Plan for a death benefit in the aggregate amount of $5,000,000. Compl. ¶ 19. Plaintiff became a participant in the Fund by virtue of his employment by and relationship with DuraTech and was not a member of a collective bargaining unit. *See* Compl. ¶¶ 21, 22. Plaintiff made four annual payments of $200,000 beginning in 1998. Compl. ¶ 19. During the 2010s, DuraTech's business declined from 26 employees to fewer than five. Compl. ¶ 26. Plaintiff alleges that he informed Defendant McDowell he intended to retire and that McDowell informed him he would be placed on "retirement status." Compl. ¶ 26. By 2012, DuraTech no longer employed any Union members. Compl. ¶ 26. In 2020, Plaintiff alleges that he received two letters from the Fund notifying him that the death benefits of individuals aged 65 or older were being reduced by 30%. Compl. ¶ 28. However, Plaintiff acknowledges that McDowell subsequently advised him that the benefits were not being reduced after all but that the Fund was supposedly taking 30% of the accrued cash value in his policies. Compl. ¶ 29.

While DuraTech initially complied with the terms of the Plan and employed Union members pursuant to its collective bargaining agreement, by 2012 DuraTech no longer was a party to a collective bargaining agreement and had failed to pay its required Union dues. Compl. ¶ 26. The Fund notified DuraTech in 2022 that it was not in compliance with the terms of the Plan based on its failure to maintain Union employees and that DuraTech's participation in the Fund was terminated along with all benefits provided thereunder. *See* Compl. ¶ 30; Compl. Ex. E, DuraTech Termination Letter ("DuraTech Corporation's participation in the Fund is hereby terminated and all benefits under the Fund are terminated as well."). When an employer ceases to participate in

---

[2] The Court can consider the Subscription Agreement in connection its motion to dismiss because it forms part of the operative Plan documents and is fundamental to Plaintiff's claims. *See infra*, Legal Standard.

104366507

3

the Plan because it is no longer a Union employer and has defaulted on its obligations to the Union (such as paying dues), all employee participants of that employer lose their right to participate in the Plan. *See* Ex. 1, SPD at 3, Chapter 5 ("If your Member Employer ceases to participate in the Plan as a Member Employer, you will no longer be eligible for benefits under the Plan.").

To participate in the Fund, an employer must retain its Union status. This requirement is clearly delineated in the Plan documents. *See*; Ex. 1, SPD at 2, Chapter 2 ("Each Member Employer with employees participating in the Plan makes contributions to the Plan as required by the collective bargaining agreement between the Union and the Member Employer."); Compl. Ex. A, Trust Agreement at 3, Article 1, Section 1.4 ("'Employer' means any member of the Master Contract Group, or any entity which has entered into a Collective Bargaining Agreement with the Union, together with such other Employers which adopt and are bound by the provisions of this Trust with the consent of the Union and the Master Contract Group."); *see also* Compl. Ex. E, DuraTech Termination Letter, ("The Plan and its ancillary documents require that each participating employer be a union employer in good standing with Local 707, National Production Workers, employing union employees and making contributions to the union.").

Due to DuraTech's failure to maintain Union employee participants and pursuant to the written terms of the Plan, all benefits were properly terminated in 2022. Compl. Ex. E, DuraTech Termination Letter ("DuraTech Corporation's participation in the Fund is hereby terminated and all benefits under the Fund are terminated as well.").

**LEGAL STANDARD**

Under Rule 12(b)(6), a plaintiff's complaint may be dismissed if it fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* A "plaintiff's obligation to provide the

'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. In the

Seventh Circuit, conclusory allegations that merely recite the elements of a claim are not entitled

to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). Rule 12(b)(1)

allows dismissal for "lack of subject-matter jurisdiction" of claims asserted in a complaint. FED.

R. CIV. P. 12(b)(1). In analyzing a motion under Rule 12(b)(1), this Court must "accept as true all

well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Evers

v. Astrue*, 536 F.3d 651, 656 (7th Cir. 2008) (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d

548, 554 (7th Cir. 1999)).

Documents attached to a motion to dismiss may be considered as part of the pleadings if

they are referred to in the plaintiff's complaint and are central to his claim. *188 LLC v. Trinity

Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002); *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244,

1248 (7th Cir. 1994) ("[D]ocuments attached to a motion to dismiss are considered part of the

pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such

documents may be considered by a district court in ruling on the motion to dismiss.").[3]

Additionally, when a party raises the issue of subject matter jurisdiction, the Court "may properly

look beyond the jurisdictional allegations of the complaint and view whatever evidence has been

---

[3] *See Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009) (permitting reference to SPDs and Trust Agreement in connection with claims for breach of fiduciary duty under ERISA); *Ed Miniat, Inc. v. Globe Life Ins. Grp., Inc.*, 805 F.2d 732, 739 (7th Cir. 1986) (permitting reference to a welfare plan referred to in the complaint in order to decide whether the plan qualifies under ERISA).

104366507        5

submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Evers*, 536 F.3d at 656–57 (quoting *Long*, 182 F.3d at 554).

## ARGUMENT & AUTHORITIES

Plaintiff was properly terminated as a participant under the Plan due to DuraTech's failure to comply with Plan terms and, consequently, is no longer a participant with standing to bring his claims. Even if Plaintiff has standing, his claims should nonetheless be dismissed due to Plaintiff's failure to exhaust the mandatory administrative remedies set forth in the Plan documents. In addition, Plaintiff's claims for breach of fiduciary duty and prohibited transactions as asserted against Trustee Defendants Gary Meyers and John Fernandez (the "Trustees") should be dismissed because they fail to state a claim upon which relief may be granted.

**A.**     **The Court lacks subject-matter jurisdiction over Plaintiff's claims because Plaintiff is no longer a participant under the Plan and lacks standing to pursue the claims he has asserted.**

    **1.**     **Plaintiff lacks standing because he acknowledges that he is no longer a participant.**

Under ERISA, only plan participants or beneficiaries can bring claims against a plan for benefits under § 502(a). 29 U.S.C. § 1132(a); *Kamler v. H/N Telecomm. Servs., Inc.*, 305 F.3d 672, 678 (7th Cir. 2002). A "participant" is someone who either is currently covered under a welfare plan or has "a colorable claim to vested benefits." *Kamler*, 305 F.3d at 678 (citing 29 U.S.C. § 1002(7) and *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989)). It is well settled that the list of parties that have standing to sue under ERISA Section 502(a) is exclusive. *See, e.g.*, *Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 247 (2000) (the language in § 502 did not limit the universe of possible defendants, but "§ 502(a) itself demonstrates Congress' care in delineating the universe of plaintiffs who may bring certain civil actions.").

Here, Plaintiff admits in the Complaint he is not a Union Employer, had no Union employees and was not party to a collective bargaining agreement. Compl. ¶¶ 22, 26. He admits he received a letter from the Trust terminating DuraTech and his participation on those grounds on August 10, 2022. Compl. ¶ 30. He does not contest that he was not a Union employer. Accordingly, Plaintiff is not a participant, beneficiary, or fiduciary under the Plan, which is a fundamental element to have standing under ERISA sections 502(a)(1)[4] and 502(a)(3)[5].

**2.    The plain terms of the Plan confirm that Plaintiff was properly terminated and is no longer a participant entitled to benefits.**

Beyond Plaintiff's own admission, the plain terms of the plan show that Plaintiff is no longer a participant, is not entitled to benefits under the Plan, and lacks standing to assert claims under ERISA. As explained above, participation under the Plan is conditioned on a participant's employer maintaining Union status. Because DuraTech failed to do so, it was properly terminated as a participating employer, along with its participating employees, such as Mr. Fulton. *See supra*, Background Part B.

Plaintiff appears to contend that he has standing to sue as a participant despite his termination based on his claim (1) that his death benefits under the Plan were vested (Compl. ¶ 23) and (2) that DuraTech was improperly terminated. However, the plain terms of the Plan foreclose both contentions.

**a.    The Plan's benefits are expressly unvested for all participants.**

As a threshold matter, the Plan is welfare plan, in which benefits are unvested by the plain

---

[4] *See* ERISA Section 502(a)(1), 29 U.S.C. § 1132(a)(1) ("A civil action may be brought—(1) by a participant or beneficiary . . . .").

[5] *See* ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3) ("A civil action may be brought—(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.").

terms of the statute unless plan documents vest them. 29 U.S.C §1002(1). When a benefit is exempt from ERISA's vesting requirements, the Supreme Court has held that no barrier exists to the modification or discontinuation of the benefit. *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995); *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 434 (2015) ("Although ERISA imposes minimum funding and vesting standards for pension plans . . . it explicitly exempts welfare benefit plans from those rules, §§ 1051(1), 1081(a)(1)."); *M & G Polymers USA,* 547 U.S. at 435 (stating employers have large leeway to design welfare plans as they see fit).

Here, the Plan documents expressly do not vest the death benefits provided under the Plan. The Subscription Agreement, bearing Plaintiff's signature, states, "The Employer further understands and agrees that the United Employee Benefit Fund is the owner and premium payer of all life insurance policies, and that **no rights under any policy may vest in the Employer or any participant.**" *See* Ex. 2, Subscription Agreement at 7 (emphasis added). The SPD also states that the Plan may be amended or terminated and expressly reserves the right to do so without penalty. Ex. 1, SPD at 6, Chapter 7(C) (The Plan sponsors may "amend, modify, change, revise or discontinue the Plan at any time for any reason."), at 1 ("The Trustees reserve the right and have been given the discretion to amend, modify or discontinue all or part of the Plan whenever, in their sole and unrestricted judgment . . . ").

Further, as explained above, the Trust Agreement provides that participants have no ownership in the insurance policies that the Plan purchases on their life and that the Plan may freely borrow, leverage, or liquidate the insurance policies in its discretion. *See* Compl. Ex. A, Trust Agreement, Sections 3.3, 3.6, 4.2. Similarly, the Subscription Agreement reiterates that, "No employee nor any person claiming by, through or under any employee shall have any right, title to, interest in or to any contribution of the Employer, or any part thereof." Ex. 2, Subscription

Agreement at 9.

Simply put, Plaintiff has no colorable claim to vested benefits under the Plan and his mere "belief" that such benefits are vested is insufficient in the face of the plain language of the Plan. *Sallee v. Rexnord Corp.*, 985 F.2d 927, 929 (7th Cir. 1993) (finding that ex-employees, who did not allege any expectation of returning to covered employment and who had no colorable claim to vested benefits, were not "participants" and therefore had no standing); *In re Sears Retiree Grp. Life Ins. Litig.*, 90 F. Supp. 2d 940, 945–50 (N.D. Ill. 2000) (holding life insurance benefits did not vest upon retirement because plan documents contained specific reservation of rights clauses, premium payments did not constitute purchase of retiree life insurance, and statements in informal handbooks did not create vested right to free retiree life insurance)

### b. DuraTech was properly terminated pursuant to the terms of the Plan for its failure to maintain its Union status.

ERISA plans are required to be administered in accordance with the terms of their written plan documents. Under the Plan, Plaintiff's status as a participant was tied to DuraTech's status as a participating employer. Because DuraTech lost status and was properly terminated as a participating employer based on its withdrawal from the Union, Plaintiff was properly terminated as a participant and has no standing to assert claims under ERISA.

To participate in the Fund, an employer must maintain its Union status. This requirement is clearly delineated in the written terms of the Plan Documents.[6] *See supra*, Background Part B.

---

[6] *See* Ex. 1, SPD at 2, Chapter 2 ("Each Member Employer with employees participating in the Plan makes contributions to the Plan as required by the collective bargaining agreement between the Union and the Member Employer."); Ex. 1, Trust Agreement at 3, section 1.4 ("'Employer' means any member of the Master Contract Group, or any entity which has entered into a Collective Bargaining Agreement with the Union, together with such other Employers which adopt and are bound by the provisions of this Trust with the consent of the Union and the Master Contract Group."); *see also* Pl.'s Ex. E, DuraTech Termination Letter, (Dkt. No. 3-5) ("The Plan and its ancillary documents require that each participating employer be a union employer in good standing with Local 707, National Production Workers, employing union employees and making contributions to the union.").

Beyond the plain terms of the Plan, Defendant McDowell sent a letter to Mr. Fulton on August 15, 1998, explaining that DuraTech was required to maintain Union status and pay Union dues. The letter plainly states, "One of the required preconditions for participating in the UEBF is that the eligible employees of each participating company elect to be represented by . . . the Union. In order to remain in good standing of the Union, employees must pay dues of $25.00 per month." *See* Ex. 3, Letter[7].

Because Plaintiff's benefits were unvested and properly terminated pursuant to the terms of the Plan, Plaintiff lacks standing to bring his claims under ERISA and the Court should dismiss his Complaint.

**B.**    **Plaintiff's claims for breach of fiduciary duty should be dismissed because the relief Plaintiff seeks is available under Section 502(a)(1)(B).**

While Plaintiff asserts claims for alleged breach of fiduciary duty, he does not allege claims for benefits allegedly owed under Section 502(a)(1)(B). Instead, Plaintiff circuitously asserts claims for equitable relief pursuant to Section 503(a)(3) despite the fact that the relief he seeks is to have Fund assets distributed to beneficiaries, including himself. Claims for individualized relief premised on an alleged breach of fiduciary duty sound under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3). *Varity Corp. v. Howe*, 516 U.S. 489, 507–15 (1996). However, relief under Section 502(a)(3) is generally unavailable when "Congress elsewhere provided adequate relief for a beneficiary's injury" such as through a claim for benefits under Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). *Varity Corp.*, 516 U.S. at 515.

---

[7] The Court can consider the letter sent by Defendant McDowell in connection to its motion to dismiss because it is fundamental to Plaintiff's claims and challenges Plaintiff's standing. *See supra*, Legal Standard.

It is well settled that a plaintiff may not recast a claim for benefits as a claim for breach of fiduciary duty and that a plaintiff may not pursue equitable relief where ERISA otherwise provides redress. *See id.* ("where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be appropriate.") (internal quotation marks and citation omitted); *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 258 (2008) ("relief is not appropriate under § 502(a)(3) if another provision, such as § 502(a)(1)(B), offers an adequate remedy") (internal quotation marks and citation omitted); *Powers v. Corn Prods. Int'l, Inc.*, 557 F. Supp. 2d 928, 933 (N.D. Ill. 2008) (dismissing claim under § 502(a)(3) where the plaintiff also sought relief under § 502(a)(1)(B)).

Accordingly, because Plaintiff's alleged injury is the deprivation of benefits and because the relief Plaintiff seeks are the benefits he alleges he is owed, Plaintiff's claims for equitable relief pursuant to Section 502(a)(3) should be dismissed.

**C.      Plaintiff's Complaint should also be dismissed because Plaintiff has not exhausted his mandatory administrative remedies under the Plan.**

Even if Plaintiff had standing, Plaintiff's claims should also be dismissed because he has not exhausted the mandatory administrative remedies available under the Plan. *See Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 649 (7th Cir. 1996).[8]  Under the SPD, beneficiaries "must submit a written claim for benefits to the Plan Administrator" and must exhaust "his or her rights to review under" the Plan before seeking "review of a denial of benefits or [bringing] any action in any court to enforce a claim for benefits."  Ex. 1, SPD at 3–4.  Under the Trust Agreement, "All questions or controversies of any kind arising between any parties or persons in connection with the Trust

---

[8] This court could even dismiss this case on Summary Judgment grounds. As the Seventh Circuit noted in *Lindeman* through Judge Cummings, "Judge Castillo's decision to require Lindemann to exhaust her administrative remedies prior to pursuing her ERISA action in federal court, and his decision to grant Mobil summary judgment as opposed to staying Lindemann's case were not abuses of his discretion." 79 F.3d at 651.

or its operation, whether as to any claim for benefits, the construction of this Agreement, the Plans of Benefits, or any decision, or accounts in connection with the operation of the trust, shall be submitted to the Trustees for decision." Compl. Ex. A, Trust Agreement at 17.

Here, Plaintiff has not complied with the mandatory administrative remedies available under the Plan because he has not submitted a claim for benefits of any kind, nor has he raised or submitted any issue to the Trustees for resolution as required under the Trust Agreement. *See Stark v. PPM Am., Inc.*, 354 F.3d 666, 671 (7th Cir. 2004) (affirming dismissal of ERISA claim where claimant did not exhaust available administrative remedies). Indeed, Plaintiff acknowledges that he has not exhausted the administrative remedies available to him under the Plan and instead argues that his appeal is excused or would be futile. Compl. ¶¶ 59, 60.

Contrary to Plaintiff's claim, he is not excused from complying with the Plan and exhausting its mandatory administrative remedies. Though ERISA does not expressly require exhaustion of administrative remedies before filing suit, "[the Seventh Circuit] ha[s] interpreted ERISA as requiring exhaustion of administrative remedies as a prerequisite to bringing suit under the statute." *Di Joseph v. Standard Ins. Co.*, 776 F. App'x 343, 348 (7th Cir. 2019). Similarly, Plaintiff alleges that his claims fall outside the scope of any exhaustion language of the Plan because he asserts claims for breaches of fiduciary duty. *See* Compl. ¶ 59. But the Seventh Circuit has held that the strong public policy encouraging private resolution of ERISA disputes "mandates the application of the exhaustion doctrine to statutory claims for breach of a fiduciary duty under ERISA." *Powell v. A.T. & T. Commc'ns, Inc.,* 938 F.2d 823, 825 (7th Cir.1991); *Kross v. Western Elec. Co.*, 701 F.2d 1238, 1244 (7th Cir. 1983).

Plaintiff also cannot evade the exhaustion requirement based on his claims of futility. *See* Compl. ¶ 60 ("any administrative appeal would be futile because the entity hearing the appeal (the

104366507                                                    12

Plan Administrator) is the same Plan Administrator that made the decisions that are at issue in this lawsuit."). Futility "applies only where a plaintiff shows that it is certain that [his] claim will be denied on appeal, not merely that [he] doubts that an appeal will result in a different decision." *Shine v. Univ. of Chicago*, No. 12 C 8182, 2013 WL 1290206, at \*6 (N.D. Ill. Mar. 28, 2013) (citing *Lindemann,* 79 F.3d at 650) (internal quotations marks omitted). Plaintiff cannot avail himself of the futility exception because he offers no evidence to support his conclusion that the Plan Administrator would make the same decision. *See Zhou v. Guardian Life Ins. Co. of Am.,* 295 F.3d 677, 680 (7th Cir. 2002) ("When a party has proffered no facts indicating that the review procedure that he initiated will not work, the futility exception does not apply.").

Plaintiff's failure to exhaust his remedies contravenes Congress's purpose of "minimiz[ing] the number of frivolous lawsuits, promot[ing] a non-adversarial dispute resolution process, and decreas[ing] the cost and time of claims settlement." *Lindemann,* 79 F.3d at 649–50. Plaintiff cannot show with certainty that his claims would be denied and therefore cannot avail himself of the futility exception.) *See Lindemann*, 79 F.3d at 650 ("In order to come under the futility exception to the exhaustion requirement a plaintiff must show that 'it is certain that [her] claim will be denied on appeal, not merely that [she] doubts that an appeal will result in a different decision.'").

### D. The Fund is not a fiduciary and therefore is not a proper Defendant for Plaintiff's breach of fiduciary and prohibited transaction claims.

To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege "(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016) (citing *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010)). To satisfy

the first element, a party can either be named as a fiduciary in the plan documents or meet ERISA's functional definition. *Bartnett v. Abbott Lab'ys*, 492 F. Supp. 3d 787, 795 (N.D. Ill. 2020).

ERISA defines the term "fiduciary" as follows:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

Plaintiff has not adequately pleaded that the Fund, as an entity, is a fiduciary and instead pleads only that Defendants Meyers, Fernandez, and Fensler, and McDowell were fiduciaries. Compl. ¶¶ 10–14. The Plan documents clearly state that the trustees of the Fund are the named fiduciaries. *See* Compl. Ex. A, Trust Agreement at 5, Section 2.1 ("The Trustees shall be the 'named fiduciary' within the meaning of ERISA Section 402(a)(2).").

Absent being a named fiduciary, a plaintiff must sufficiently allege that the defendant: (1) is a fiduciary defined in 29 U.S.C. § 1002(21) and (2) was acting in its capacity as a fiduciary at the time it took the actions that are the subject of the complaint. *Bartnett*, 492 F. Supp. 3d at 795. Here, Plaintiff fails to allege facts to plausibly plead that the Fund is a functional fiduciary and instead merely makes conclusory allegations that ERISA imposes "fiduciary obligations on [UEBF], its trustees, its Plan Administrator, and anyone else acting on behalf of the [plan] in a fiduciary capacity to act exclusively in the interest of plan participants . . . ". Compl. ¶ 62. The Fund as an entity cannot have discretionary authority over itself and accordingly cannot be a fiduciary. *See Dean v. Nat'l Prod. Workers Union Severance Tr. Plan*, 46 F.4th 535, 546, n. 2 (7th Cir. 2022), *reh'g denied*, No. 21-1872, 2022 WL 4126291 (7th Cir. Sept. 9, 2022) ("Given that

plans cannot be fiduciaries of themselves, we affirm the district court's dismissal of the breach of fiduciary duties claims against the Plans on this basis."); *see also Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1458 (5th Cir. 1995) (holding a plan did not fall within the statutory definition of a fiduciary and therefore could not be held liable for breach over duty because the plan cannot have discretionary authority over itself.).

Because Plaintiff has pleaded no factual basis to plausibly allege that the Fund itself is a fiduciary under ERISA, Plaintiff's breach of fiduciary duty claim against Defendant UEBF should be dismissed. *See Bartnett*, 492 F. Supp. 3d at 795 (dismissing ERISA breach of fiduciary claim against defendant when plaintiff failed to allege any facts, beyond conclusory statements, as to whether defendant was a fiduciary under the statute and acted in its capacity as a fiduciary when it took actions in subject to the complaint); *see also Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 512 (7th Cir. 2009) (affirming dismissal of fiduciary duty claim because complaint's "conclusory statements" failed to sufficiently allege that defendant was a fiduciary).

Similarly, Plaintiff's claim for prohibited transactions under 29 U.S.C. §§ 1106(a) and (b), both implicate an action by a *fiduciary*. *See* 29 U.S.C. §§ 1106(a) and (b) ("A **fiduciary** with respect to a plan shall not cause the plan to engage in a transaction . . . A **fiduciary** with respect to a plan shall not . . .") (emphasis added). Because the Fund is not a fiduciary, it cannot be a proper defendant for Plaintiff's prohibited transaction claim. Accordingly, Plaintiff's claims for breach of fiduciary duty and prohibited transactions against the Fund should be dismissed.

E.     **Counts I and II should be dismissed because Plaintiff has not pleaded facts to plausibly support either claim.**

    1.     **Plaintiff fails to plead sufficient facts to support a breach of fiduciary duty claim against Defendant Trustees.**

Plaintiff's allegations against the Trustees are wholly insufficient to plausibly state a claim for breach of fiduciary duty. The facts alleged must "provide sufficient detail to present a story

that holds together." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (internal quotation marks omitted). Here, the Complaint contains sparingly few facts regarding the Trustees and instead focuses on allegations concerning alleged breaches by Defendants McDowell and Fensler. After disregarding Plaintiff's conclusory allegations, there remain no clear facts that plausibly suggest that the Defendant Trustees breached any fiduciary duty.

Plaintiff alleges that Defendants failed to advise or give Plaintiff an opportunity to purchase the life insurance policy that funded his death benefit, but those allegations are belied by the documents Plaintiff attaches to his Complaint. Compl. ¶ 63. As explained in the Plan's SPD, participants are permitted to purchase their policies utilizing the procedure set forth in the SPD. The SPD in Chapter 7.G states:

> If your employment terminates with a Member Employer or if you cease to be a Participant in the Plan because your Member Employer stops participating in the Plan as a Member Employer, **you may purchase the life insurance policy that was used to provide your death benefit for its current net value (as actuarially determined by the insurance company)**. If the policy's current cash value is less than the policy's full reserve, you may be required to pay the difference. For more information, contact the Plan Administrator.

Ex. 1, SPD at 6, Chapter 7.G (emphasis added.). Plaintiff always had the option of purchasing his policy and to initiate the process needed only to have contacted the Plan Administrator. Plaintiff has not pleaded that he made any demand to purchase his policy in accordance with the procedure set forth under the Plan or that he was barred from exercising his right to purchase the policy. Plaintiff's failure to do so is entirely his own fault and not a breach of fiduciary duty.[9]

Plaintiff also alleges that Defendants' other acts and omissions "led to the loss of the death benefit Plaintiff [was] promised", "resulted in a lapse of the insurance policy that funded

---

[9] A plaintiff can plead himself out of court via documents that are attached to his complaint that indicate that he is not entitled to judgment. *See N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 455 (7th Cir. 1998).

Plaintiff's . . . death benefit", and caused excess commissions or otherwise engaged in self-dealing and enrichment. Compl. ¶ 63. However, Plaintiff fails to offer facts to support these conclusory allegations against the Trustees, as many of his factual allegations specifically involve Defendant McDowell, not the Trustees. Compl. ¶¶ 26, 27, 29.

The only "facts" Plaintiff offers to support his allegations against the Trustees are that: (1) the Fund's payment of administrative expenses and legal fees are depleting assets (Compl. ¶ 38); the Fund purchased universal life policies instead of term policies which incurred excessive fees (Comp. ¶¶ 39, 40); and that such fees are unreasonable (Compl. ¶ 41).

Despite consciously paying over $800,000 in premiums over 24 years for his $5,000,000 death benefit, Plaintiff now claims that such payments were excessive. Compl. ¶ 32. But Plaintiff fails to allege that the payments or fees were high with respect to the service or benefit provided. *See Albert v. Oshkosh Corp.,* 47 F.4th 570, 579 (7th Cir. 2022), *reh'g denied*, No. 21-2789, 2022 WL 4372363 (7th Cir. Sept. 21, 2022) (citing *Forman v. TriHealth, Inc.*, 40 F.4th 443, 449 (6th Cir. 2022) ("concluding plaintiffs failed to state a claim as to "overall plan fees" where "the employees never alleged that these fees were high in relation to the services that the plan provided")"). Nor could he, given that he himself agreed to join the Plan for the stated death benefits at the assessed premiums.

Plaintiff utterly fails to meet his burden to plausibly plead sufficient facts to support claims for breach of fiduciary duty against the Defendant Trustees. Plaintiff's claim for breach of fiduciary duty against the Defendant Trustees should accordingly be dismissed.

    **2.**    **Plaintiff fails to plead sufficient facts to support a prohibited transaction claim against Defendant Trustees.**

"To state a claim under § 406(a)(1)(C), a plaintiff must allege that the transaction in question was between the plan and a party in interest." *Scott v. Aon Hewitt Fin., Advisors, LLC*,

No. 17 C 679, 2018 WL 1384300, at *9 (N.D. Ill. Mar. 19, 2018) (internal citations omitted.) In addition, a plaintiff also must allege that a plan fiduciary "caused the plan to engage in the allegedly unlawful transaction." *Lockheed Corp. v. Spink*, 517 U.S. 882, 888–89 (1996). To engage in a § 406(b)(3) prohibited transaction, a party must receive consideration for its own personal account from a party dealing with the Plan. *See* 29 U.S.C. § 1106(b)(3).

Here, Plaintiff does not allege a single fact to support his claim that Defendants Meyers and Fernandez engaged in a prohibited transaction. For instance, Plaintiff alleges Defendants engaged in a prohibited transaction by "structuring Plaintiff's and the Class Members' benefits in a manner that paid McDowell excessive brokerage commissions for selling universal life insurance policies, and by making loans and other payments to McDowell and others that were unlawful and which impaired the value and continuation of Plaintiff's and Class Members' death benefits." Compl. ¶ 73. However, Plaintiff's Complaint does not allege that the Trustees were enriched or engaged in self-dealing or provide any factual allegations about any specific prohibited transaction. Instead, Plaintiff's Complaint refers vaguely to "loans and other payments" of which not a single example is provided.

The only other mention of prohibited transactions involves the Complaint's citation to a different case, *Su v. Fensler, et al.*, Case No. 1:22-cv-1030 (N.D. Ill.).[10] However, reliance on other pleadings within a complaint is plainly insufficient and Plaintiff merely summarizes the already conclusory allegations in the collateral litigation upon which he relies. For example, Plaintiff claims that "[t]he lawsuit alleges that the named defendants breached their fiduciary duties owed to plan participants and that they engaged in transactions prohibited by 29 U.S.C. § 1106". Compl.

---

[10] By operation of law, Julie A. Su was substituted *sub nom.* for former Secretary of Labor Martin J. Walsh. *See* Fed. R. Civ. P. 25(d).

¶ 46. Plaintiff's compliant continues that, "[t]he *Walsh* lawsuit alleges that plan assets were used to make improper loans to trustees, and that plan assets were improperly used to make monetary transfers to McDowell's real estate foreclosure attorney, to make improper payments to purchase McDowell's personal home out of foreclosure, to pay unreasonable compensation to McDowell, and that other ERISA violations were committed." Compl. ¶ 47.

Plaintiff cannot rely on conclusory allegations from other lawsuits to adequately plead his own claims. *See Pelfresne v. Vill. of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) (holding a fleeting parenthetical mention of another case with allegations is insufficient to sustain a reasonable inference in a plaintiff's complaint); *Bardo v. Stolworthy*, No. 15-CV-1193-JPG, 2015 WL 7713710, at *5 (S.D. Ill. Nov. 30, 2015) ("an amended complaint must contain all the relevant allegations in support of Plaintiff's claims and must stand on its own, without reference to any other pleading."). Because Plaintiff pleads to plausible factual allegations to support his prohibited transaction claims against the Trustees, his claim should be dismissed.

## CONCLUSION

For all these reasons, Defendants respectfully request that the Court grant their motion to dismiss all claims asserted against them. Defendants further request all other relief to which they are entitled.

Dated: July 18, 2023          Respectfully submitted,

 */s/ Robert R. Tepper*
Robert R. Tepper (ARDC # 2810190)
Dressler Peters LLC
101 W Grand Ave, Suite 404
Chicago, IL 60654
Telephone: (630) 204-2119
Direct: 312-251-0031
Office: 312-602-7360
Email: rtepper@dresslerpeters.com

104366507                          19

Christopher Rillo (*admitted pro hac vice*)
Raerani Reddy (*admitted pro hac vice*)
Baker Botts L.L.P.
101 California Street
Suite 3200
San Francisco, CA 94111
christopher.rillo@bakerbotts.com

Matthew G. Sheridan (*admitted pro hac vice*)
Baker Botts L.L.P.
910 Louisiana Street
Houston, Texas 77002
matthew.sheridan@bakerbotts.com

**ATTORNEYS FOR DEFENDANTS**
**UNITED EMPLOYEE BENEFIT FUND,**
**GARY MEYERS, AND JOHN FERNANDEZ**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he served the foregoing motion on all counsel of record by filing this motion with the Court's CM/ECF filing system.


Dated:  July 18, 2023                              /s/ *Robert R. Tepper*